IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAWANZA SMITH, et al.,

    Plaintiffs,

      v.

IDEAL TOWING, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:16-CV-1359-TWT

## OPINION AND ORDER

This is an FLSA overtime action. It is before the Court on the Defendants'
Motion for Partial Summary Judgment [Doc. 66]. For the reasons set forth below, the
Defendants' Motion for Partial Summary Judgment [Doc. 66] is GRANTED in part
and DENIED in part.

### I. Background

The Plaintiffs in this case are former tow truck drivers for the Defendant Ideal
Towing, LLC, which was owned and operated by the Defendant Michael James. The
Defendants also include Tishja James, Michael James's wife, who is also alleged to
have been a co-owner of Ideal Towing with managerial duties in the company, and I-
Tow & Transport LLC, which is alleged to be a successor to Ideal Towing. The

Plaintiffs allege that the Defendants misclassified them as independent contractors, and consequently violated the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA").[1] The Plaintiffs also claim that the Defendants violated 26 U.S.C. § 7434 by fraudulently classifying the Plaintiffs as independent contractors on forms filed with the IRS.[2]

The Defendants now move for partial summary judgment on five issues. First, the Defendants argue that Tishja James cannot be held liable as an "employer" under the FLSA. Second, they argue that the Plaintiffs' waiting time is not compensable under the FLSA. Third, they contend that I-Tow cannot be held liable as a successor to Ideal Towing. Fourth, they argue that the Plaintiffs are not entitled to liquidated damages under the FLSA because the Defendants acted with good faith. Finally, they move for summary judgment on the Plaintiffs' claim for fraudulent filing of tax information under 26 U.S.C. § 7434.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and

---

[1]      Am. Compl. ¶ 1.

[2]      *Id.* ¶¶ 144-49.

that the movant is entitled to judgment as a matter of law.[3] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[4] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[5] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[6] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[7]

### III. Discussion

**A. Tishja James**

The Plaintiffs claim that Tishja James, the wife of Michael James, should be held individually responsible because she is an "employer" within the meaning of the FLSA. The Defendants move for summary judgment on this issue, arguing that Tishja

---

[3]   FED. R. CIV. P. 56(a).

[4]   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[5]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[6]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[7]   *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

James did not have the type of role in the company necessary to be considered an "employer" under the FLSA.[8]

A company officer "cannot be held individually liable for violating the . . . [provisions] of the FLSA unless he is an 'employer' within the meaning of the Act."[9] To be considered an "employer" under the FLSA, "an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."[10] For example, in *Patel v. Wargo*, the Eleventh Circuit concluded that the defendant, who was the company's president, director, and principal stockholder, was not an employer under the FLSA.[11] This was because he "did not have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee."[12]

The Defendants argue that Tishja James is not an "employer" within the meaning of the statute because she was not involved in the day-to-day operation of Ideal Towing and did not have direct supervisory authority. They argue that, instead,

---

[8]    Defs.' Mot. for Partial Summ. J., at 3-5.

[9]    *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008).

[10]    *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986).

[11]    *Id.* at 637-638.

[12]    *Id.* at 638.

Michael James was the sole owner of Ideal Towing who made all of the managerial decisions.[13] The Defendants contend that Tishja only assisted Michael in a clerical capacity,[14] and that she had no authority over many aspects of the business, such as "compensation, rate, method of payment, hiring, firing, work schedules, conditions of employment, or supervisory matters."[15] They further argue that "Michael James, not Tishja, signed all checks, maintained personnel records, and supplied the company equipment and facilities."[16]

However, the Plaintiffs have provided enough evidence to allow a reasonable jury to infer that Tishja James was involved in the day-to-day operations of the company and that she had some direct responsibility for supervision of the employees. The Plaintiffs have offered evidence showing that Ms. James shared part of the ultimate decisionmaking authority in the company.[17] They have also produced evidence that she signed the paychecks,[18] mediated employee conflicts,[19] reduced

---

[13]    Defs.' Mot. for Partial Summ. J., at 3-4.

[14]    *Id.* at 4.

[15]    *Id.*

[16]    *Id.* at 4-5.

[17]    Burney Dep. at 59; Lewis Dep. at 78.

[18]    Lewis Dep. at 78.

[19]    Wynn Dep. Vol. II at 37, 43.

employee pay for damage to the vehicles,[20] and made payroll,[21] scheduling,[22] and disciplinary decisions.[23] Furthermore, Ms. James represented to some of the drivers that she was a "co-owner" of Ideal Towing along with Mr. James,[24] and some documents also referred to her as a "supervisor" and as a "manager."[25] From this evidence, a reasonable jury could conclude that Ms. James was involved in the day-to-day operations of the company and maintained a supervisory role over the employees. Therefore, a genuine issue of material fact exists as to Ms. James's role in the company.

The Defendants argue that the Plaintiffs "rely upon their own deposition testimony" and that the evidence produced is "insufficient to establish actual involvement."[26] However, these are disputes of fact that the jury should resolve. Given this evidence, a reasonable jury could find that Ms. James was involved in the day-to-day operations of the business, and that she had a supervisory role in the company.

---

[20]   *Id.* at 37.

[21]   *Id.* at 36-37.

[22]   *Id.*

[23]   Michael James Dep. at 89-90.

[24]   Burney Dep. at 59.

[25]   Michael James Dep. at 89-90.

[26]   Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 3.

Accordingly, the Defendants are not entitled to summary judgment as to the question of Tishja James's status as an "employer" under the FLSA.

### B. Waiting Time

Next, the Defendants argue that the Plaintiffs' waiting time is not compensable under the FLSA. First, the Defendants argue that the Plaintiffs were "waiting to be engaged," which is not compensable under the FLSA.[27] Second, the Defendants argue that the "homeworkers' exception" applies here, which precludes the Plaintiffs' waiting time from being compensable.[28] The Court holds that the Defendants are not entitled to summary judgment on this issue.

First, the Defendants argue that the Plaintiffs' waiting time is not compensable because the Plaintiffs were "waiting to be engaged," as opposed to being "engaged to wait," which is not compensable under the FLSA.[29] The Court finds that summary judgment is not appropriate. Based on the evidence provided, a reasonable jury could conclude that the Plaintiffs' waiting time is compensable.

---

[27]    Defs.' Mot. for Partial Summ. J., at 5.

[28]    *Id.* at 8.

[29]    *Id.* at 5-6.

Time employees spend waiting to be called to duty by an employer can be compensable under the FLSA.[30] The key distinction between compensable and non-compensable waiting time is whether the employee is "engaged to be waiting" or "waiting to be engaged."[31]  "When employees are engaged to wait for the employer's call to duty, this time may be compensable under the FLSA."[32] "The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities."[33] If the time is spent predominately for the benefit of the employer, then it is compensable under the FLSA.[34] Whether waiting time constitutes compensable working time within the meaning of the FLSA is a question of fact and dependent upon all of the circumstances of the case.[35]

---

[30]    *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944).

[31]    *Preston v. Settle Down Enters.*, 90 F. Supp. 2d 1267, 1278 (N.D. Ga. 2000).

[32]    *Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 807 (11th Cir. 1992) (citing *Skidmore*, 323 U.S. at 136).

[33]    *Id.*

[34]    *Id.* at 807 (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).

[35]    *Skidmore*, 323 U.S. at 136-37.

An employee's use of time must be severely restricted to be considered spent predominately for the benefit employer. "The FLSA requires employers to compensate an employee for on-call time only where the employee's on-call duties severely restrict the employee's use of his or her personal time."[36] "The 'severely restricted' standard is a stringent one and employees are not entitled to on-call pay under the FLSA absent unusually onerous on-call duties."[37] The Eleventh Circuit has noted that "undesirable and perhaps oppressive" on-call requirements do not necessarily reach this level.[38] "When deciding whether on-call time is covered by the FLSA, the court should examine 'the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.'"[39]

In *Birdwell*, the Eleventh Circuit applied the predominant benefit test to determine that on-call time for the city's police detectives was not compensable. The

---

[36]    *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1135 (N.D. Ga. 2004) (citing *Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 810 (11th Cir. 1992)).

[37]    *Id.*

[38]    *Birdwell*, 970 F.2d at 809 (citing *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671 (5th Cir. 1991)).

[39]    *Id.* at 808 (quoting *Skidmore*, 323 U.S. at 137).

detectives were not required to stay at the police station, but they also could not leave town, participate in outdoor activities, go on vacation, or take compensatory time off.[40] They could not drink alcohol, and must have been able to respond promptly and sober when called.[41] However, the detectives usually worked second jobs during this time.[42] They could use their time at home as they pleased, and they could leave home whenever they desired as long as they left a forwarding number or carried a beeper.[43] The Eleventh Circuit reversed a jury verdict finding that the plaintiffs were entitled to compensation for their on-call time, and concluded that the plaintiffs' on-call time was not compensable as a matter of law.[44] The court noted that an employee's time must be "severely restricted," and that the detectives there could use the time how they wanted as long as they arrived promptly and sober when called to work.[45]

---

[40]     *Id.*

[41]     *Id.* at 810.

[42]     *Id.* at 808.

[43]     *Id.*

[44]     *Id.*

[45]     *Id.*

However, the court in *Birdwell* also distinguished a Tenth Circuit case, *Renfro v. City of Emporia*.[46] In *Renfro*, the Tenth Circuit concluded that city firefighters' on-call time was compensable.[47] Although not required to stay at the fire station, the firefighters were required to wear their pagers at all times, and report within twenty minutes of being paged.[48] Importantly, the firefighters were called upon frequently – they received on average three to five calls during the on-call time, and could receive as many as thirteen calls.[49] The court found that this high number of calls was the determinative factor that distinguished this from other cases. Since the firefighters were called upon so regularly, they could not use the on-call time for their own benefit.[50] In distinguishing *Renfro*, the court in *Birdwell* noted that the on-call detectives' "off-time was not so restricted that it was not used predominately for their benefit. They could do anything they normally did so long as they were able to

---

[46]      *Id.* at 810-11 (citing *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir. 1991)).

[47]      *Renfro*, 948 F.2d at 1537-38.

[48]      *Id.* at 1531.

[49]      *Id.* at 1532.

[50]      *Id.* at 1538.

respond to a call promptly and sober. Unlike the firefighters in *Renfro*, the detectives were never called, and they never had reason to expect to be called."[51]

The Defendants contend that the Plaintiffs' waiting time is not compensable because they were free to do "anything they normally did as long as they were able to respond to a call promptly and sober."[52] The Defendants argue that the Plaintiffs could leave Ideal Towing's premises, work other jobs, visit friends, watch television, sleep, and more.[53] Therefore, according to the Defendants, the Plaintiffs used their waiting time predominately for their own benefit. However, the Court disagrees. Based on the evidence produced, a reasonable jury could find that the Plaintiffs' waiting time was spent predominately for the Defendants' benefit.

The Plaintiffs here are more analogous to the firefighters in *Renfro* than the detectives in *Birdwell*. The Plaintiffs produced evidence that they could be assigned as many as twelve to fifteen tows in a day.[54] Like the firefighters in *Renfro*, they could not actually use this waiting time for their own benefit because they could expect to be assigned a job at any time due to the frequency of these calls. They did not have

---

[51]     *Birdwell*, 970 F.2d at 810.

[52]     Defs.' Mot. for Partial Summ. J., at 7.

[53]     *Id.*

[54]     Burney Dep. at 40-41.

long portions of uninterrupted free time, like the detectives had in *Birdwell*. In *Birdwell* and other similar cases, the employees had strict rules about their on-call time, such as not leaving the city, but they could still nonetheless use most of that time for their own pleasure.[55] Unlike the Plaintiffs here, they were rarely called to action by their employers, and thus, they could still expect to have long periods of free time for their own use.[56] In contrast, the Plaintiffs produced evidence that they responded to so many calls throughout the day,  as many as twelve to fifteen a day, that they could not actually use this time for their own benefit. Thus, a jury could conclude from this evidence that the Plaintiffs did not use this time predominately for their own benefit. For this reason, the Defendants are not entitled to summary judgment.

The Defendants next argue that the "homeworker's exception," codified in 29 C.F.R. § 785.23, applies to this case. 29 C.F.R. § 785.23 addresses the difficulty of

---

[55]    *See, e.g.*, *Birdwell*, 970 F.2d at 810; *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 674-79 (5th Cir. 1991) (concluding that on-call time, in which the plaintiff could not drink, must always be available by beeper, and must be able to arrive at work within twenty minutes, was not compensable because plaintiff was only called two or three times each week); *Jackson v. City Council of Augusta, Ga.*, 841 F. Supp. 1214, 1219 (S.D. Ga. 1993) ("Although Plaintiffs are constantly 'on-call' when off duty inasmuch as they must respond to a general alarm, their use of their off-duty time is not restricted in any way. Plaintiffs are at their leisure when off duty; they can and do enjoy full personal use of this time, in spite of the potentiality of a general alarm.").

[56]    *Birdwell*, 970 F.2d at 810.

determining the number of hours worked by employees who also reside at their employer's premises. It allows these employers and employees to enter into a "reasonable agreement" regarding the amount of compensation to be provided. The Court concludes that this exception does not apply here.

Specifically, 29 C.F.R. § 785.23 provides that:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.[57]

This regulation also applies to an on-call employee who is required by an employer to remain at home to receive telephone calls from customers.[58] "Where an employee performs services for his employer at home and yet has long periods of uninterrupted leisure during which he can engage in the normal activities of living, the Department

---

[57]      29 C.F.R. § 785.23.

[58]      *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1190 (5th Cir. 1989) (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (March 18, 1968)).

of Labor will accept any reasonable agreement of the parties for determining the number of hours worked."[59]

However, this exception does not apply to the case at hand. The Plaintiffs did not reside at the Defendants' premises, nor were the Plaintiffs required to work from home with long periods of uninterrupted personal time. They were not "homeworkers" in this sense. As discussed above, the Plaintiffs could be assigned as many as twelve to fifteen towing jobs each day, and consequently spent a significant portion of their day on the road towing cars. The purpose of this exception, addressing the difficulty of determining working time and leisure time when an employee works at home, is not present in this case. The Plaintiffs did not have long amounts of personal time at their home that would make it difficult to determine how much they worked. Therefore, this exception does not apply here.

The Defendants repeatedly cite *Halferty v. Pulse Drug Co.*[60] However, *Halferty* is distinguishable from this case. In *Halferty*, the plaintiff worked as a telephone dispatcher for a company.[61] She was required to work from home, and she needed to

---

[59]     *Id.*

[60]     864 F.2d 1185 (5th Cir. 1989).

[61]     *Id.* at 1187.

be available to answer a small number of phone calls each night.[62] However, she otherwise could spend this time as she pleased.[63] The court concluded that the plaintiff's compensation agreement with her employer was reasonable under 29 C.F.R. § 785.23, and thus she was not entitled to compensation under the FLSA.[64] Unlike the plaintiff in *Halferty*, the Plaintiffs here did not work from home, and did not have long portions of uninterrupted leisure time. Therefore, *Halferty* is distinguishable.

## C. Successor Liability

Next, the Defendants move for summary judgment as to I-Tow & Transport LLC's liability. They argue that I-Tow cannot be held liable for the obligations of Ideal Towing under a theory of successor liability.[65] The Defendants contend that I-Tow did not buy any of the assets of Ideal Towing, was created before this lawsuit was even filed, and was for the purpose of seeking a different source of revenue outside of AAA.[66] The Court concludes that the Defendants are not entitled to summary judgment on this issue.

---

[62]     *Id.*

[63]     *Id.*

[64]     *Id.* at 1190.

[65]     Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 9.

[66]     *Id.* at 9-10.

Normally, successor liability is limited to situations in which a merger or transfer of assets has occurred.[67] And, in the case of a transfer of assets, a buyer ordinarily must expressly or implicitly assumes the seller's liabilities when it purchases the predecessor's assets to be considered a successor.[68] "But when liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look."[69] In *Hatfield v. A+ Nursetemps, Inc.*, the Eleventh Circuit, relying heavily upon the Seventh Circuit's decision in *Teed v. Thomas & Betts Power Solutions, L.L.C.*, applied this liberal approach to successor liability in a case involving an FLSA claim.[70]

The federal successor liability standard for FLSA cases applied in *Hatfield* considers whether: (1) the successor had notice of the pending action; (2) the predecessor would have been able to provide the relief sought in the action before the sale; (3) the predecessor could have provided the relief after the sale; (4) the successor

---

[67]      *Glausier v. A+ Nursetemps, Inc.*, No. 5:11-cv-Oc-416-10PRL, 2015 WL 2020332, at *4 (M.D. Fla. May 1, 2015).

[68]      *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013).

[69]      *Id.*

[70]      *Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 908 (11th Cir. 2016).

can provide the relief sought in the action; and (5) there is continuity between the operations and work force of the predecessor and the successor.[71] "These considerations do not represent a rigid or mechanical test but, rather, should be applied flexibly with an understanding that 'successor liability is appropriate in suits to enforce federal labor or employment laws . . . unless there are good reasons to withhold such liability.'"[72]

The first factor asks whether the successor had notice of the pending action. A genuine issue of material fact exists as to whether the successor here, I-Tow, had notice of the Plaintiffs' lawsuit. The Defendants argue that I-Tow could not have had notice of the pending action because it was incorporated a year before the Plaintiffs filed this lawsuit.[73] The Defendants also argue that Ideal Towing ceased operations because it lost its contract with AAA, which was its primary source of business.[74] However, Mr. James did not dissolve Ideal Towing until May 12, 2016, only a month after the Plaintiffs filed this suit.[75] Furthermore, the Plaintiffs have offered evidence

---

[71]    *Id.* at 907 (quoting *Teed*, 711 F.3d at 765-66).

[72]    *Kerns v. Lamot Indus. LLC*, No. 3:16cv76-RV/EMT, 2017 WL 2903348, at *4 (N.D. Fla. June 1, 2017) (quoting *Teed*, 711 F.3d at 766).

[73]    Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 9.

[74]    *Id.*

[75]    Michael James Dep. at 26.

that some time passed after I-Tow was incorporated and before it actually began operations.[76] And, Mr. James testified that he formed I-Tow in part because he did not want the "stress" and "liability" of having a big company, including lawsuits like this one.[77] Therefore, a reasonable jury could conclude that Mr. James had notice of the pending action when terminating Ideal Towing and beginning the operations of I-Tow, and was motivated in part to change these business operations to avoid potential liability from this lawsuit.

As to the second, third, and fourth factors, neither party has produced evidence as to whether the predecessor could have provided relief before and after the "sale."[78] However, these factors "are not determinative" in deciding whether successor liability applies, and the Eleventh Circuit has noted that successor liability can exist despite these factors favoring an opposite conclusion.[79] Therefore, given the fact that these factors have not been determinative in other cases, and the flexible nature of successor

---

[76]     Ideal Towing Dep. at 28-29.

[77]     Michael James Dep. at 39-41.

[78]     The Court acknowledges that no actual "sale" of assets occurred. However, under the federal successor liability common law, the sale of assets is not required to impose successor liability. *See Teed*, 711 F.3d at 765-66.

[79]     *See Hatfield v. A+ Nursetemps, Inc.*, 651 F. App'x 901, 908 (11th Cir. 2016) ("For the second and third factors, it appears from the record that A+ Nursetemps would not have had the resources to satisfy the judgment before or after the transition. Those factors, as the district court concluded, are not determinative.").

liability in federal labor and employment law,[80] the Court finds that the lack of evidence as to these factors does not preclude successor liability.

Finally, the fifth factor asks whether there is continuity between the operations and work force of the predecessor and the successor. The Court finds that a genuine dispute of material fact exists as to this inquiry. In *Hatfield*, the Eleventh Circuit found that there was a continuity of business when the successor performed the same services, had many of the same clients, used the same location, and employed many of the same workers as the predecessors.[81] The Defendants argue that there was no continuity here because the two companies operated at different locations, used a different telephone number, and never shared Ideal Towing's "principle and

---

[80]   *See Kerns v. Lamot Indus. LLC*, No. 3:16cv76-RV/EMT, 2017 WL 2903348, at *4 (N.D. Fla. June 1, 2017) ("Thus, it appears that successor liability may be presumed in labor and employment cases insofar as there must be 'good reasons' to withhold it.").

[81]   *Hatfield*, 651 F. App'x at 908; *see also Kerns*, 2017 WL 2903348, at *4 ("Mr. Lamot changed the name of his business and moved a short distance away, but it is undisputed that there is no 'real difference between the business being carried out by Lamot and RBL.' He remained sole owner and president; he kept the plaintiff on staff doing exactly the same job; he retained the same accounting procedures, product line, and prices; and he kept a company vehicle along with at least some of the same furniture, computers running the same software, and inventory."). *But see EEOC v. Labor Sols. of Ala. LLC*, 242 F. Supp. 3d 1267, 1282 (N.D. Ala. 2017) ("[T]he two entities share the same managing officers, principal office address, and company email accounts. However, these facts are not enough to demonstrate continuity when one considers the break in time between when East Coast ceased operations and LSA began.").

irreplaceable asset, its AAA contract."[82] However, the Plaintiffs have provided enough evidence to create a dispute of material fact as to the continuity of business. First, Michael James is the owner of both of these companies, and both are in the business of towing.[83] I-Tow also uses some of the same trucks as Ideal Towing.[84] Furthermore, Michael James also testified that Ideal Towing and I-Tow had their "base of operations" at addresses next door to each other on the same road.[85] And, as discussed above, there was no significant lapse of time between the operations of the two companies. Finally, the Plaintiffs offered evidence that Michael James referred to the creation of I-Tow as simply a "name change" from Ideal Towing.[86] The Plaintiffs have offered enough evidence to create a dispute of material fact as to the continuity of business. Therefore, the Court holds that summary judgment is not appropriate as to this issue.

---

[82]     Reply Br. in Supp. of Defs.' Mot. for Partial Summ. J., at 10.

[83]     Ideal Towing Dep. at 41, 93.

[84]     Specifically, Michael James testified that Ideal Towing (which has purportedly been dissolved) leases trucks to I-Tow. However, I-Tow does not make payments on this lease, but instead paid for repairs of the trucks. Ideal Towing Dep. at 39-41. A reasonable jury could infer from this unusual lease arrangement that there is a continuity of business.

[85]     Ideal Towing Dep. at 29-30.

[86]     Smith Dep. at. 128.

**D. Good Faith**

Next, the Defendants argue the Plaintiffs are not entitled to liquidated damages because the Defendants exercised good faith in attempting to comply with the FLSA.[87] The Court concludes that the Defendants are not entitled to summary judgment on this issue.[88] Parties "who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith."[89] To "establish its good faith, [an employer] must prove both that it acted with a good faith belief that its procedures did not violate the law [subjective component]

---

[87]     Defs.' Mot. for Partial Summ. J., at 21-22.

[88]     The parties also discuss whether the Defendants acted "willfully." Ordinarily, the statute of limitations for FLSA cases is two years after the cause of action accrues. However, causes of action arising out of willful violations can be commenced within three years after the cause of action accrued. *See* 29 U.S.C. § 255(a). A violation is "willful" if "the employer either knew or showed reckless disregard for the matter  of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The plaintiff bears the burden of proving willfulness. *See id.* In assessing both of these issues – willfulness and good faith – the Court is "answer[ing] what is essentially the same question for two different purposes." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008). Although the parties have discussed the Defendants' willfulness, the Court declines to address this issue. Since the Defendants have only moved for summary judgment as to the issue of liquidated damages, the Court will limit its inquiry to the Defendants' good faith.

[89]     *Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 902 (11th Cir. 2012); *see also* 29 U.S.C. § 260.

and that it had reasonable grounds for believing this [objective component]."[90] The employer "bears the burden of establishing both the subjective and objective components of that good faith defense against liquidated damages."[91] "If the employer fails to prove that he acted with both subjective and objective good faith, 'liquidated damages are mandatory.'"[92]

The Defendants bear the burden of proof on the issue of good faith. Therefore, to succeed on a motion for summary judgment on the issue, they must show that no reasonable trier of fact could find that they acted without good faith.[93] The Defendants fall far short of meeting this burden. Generally, "[t]o satisfy the subjective 'good faith' component, the [employer has the burden of proving] that [it] had an honest intention to ascertain what [the FLSA] requires and to act in accordance with it."[94] On the other

---

[90]     *Ojeda-Sanchez*, 499 F. App'x at 903; *see also* 29 U.S.C. § 260.

[91]     *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008).

[92]     *Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991).

[93]     *One 2007 Toyota FJ Cruiser, VIN JTEBU11F670023522*, 824 F. Supp. 2d 1369, 1376 (N.D. Ga. 2011) ("But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.").

[94]     *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991) (internal quotation marks omitted).

hand "[o]bjective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA."[95]

The Defendants fail to meet their burden as to both the objective and subjective components of this test. The only argument that the Defendants offer in support of summary judgment on this issue is that Mr. James "consult[ed] and rel[ied] upon the advice of a lawyer who Michael James believed was knowledgeable of the industry standard and Department of Labor or FLSA requirements."[96] And, the only evidence the Defendant offers in support of this contention is Mr. James's own declaration that "[a]t the time I made the decision to classify my truck drivers as independent contractors, I relied on the advice of a lawyer who I believed was knowledgeable of the industry standard and Department of Labor or FLSA requirements."[97] To establish good faith, the Defendants needs to show both that they acted with an honest intention to comply with the FLSA, and that they had an objectively reasonable basis for believing that they were in compliance. This single assertion by Mr. James is not proof of good faith. The Defendants do not provide any other information about the content or nature of this consultation, which would be important in determining

---

[95]    *Friedman v. South Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185-86 (11th Cir. 2005).

[96]    Defs.' Mot. for Partial Summ. J., at 22.

[97]    Michael James Decl. ¶ 3.

whether reliance on this advice was both honest and reasonable.[98] This single statement by Mr. James that he consulted an attorney fails to provide such evidence that no reasonable trier of fact could conclude that he acted without good faith. Given this evidence, a reasonable jury could still conclude that the Defendants did not subjectively and objectively act with good faith. Therefore, the Defendants are not entitled to summary judgment on this issue.

Furthermore, a genuine dispute of fact exists as to whether Mr. James actually consulted an attorney concerning his obligations under the FLSA. When questioned about this very issue in a deposition, Mr. James stated that he did not remember whether his decision to use independent contractors was based upon legal advice, and that he did not have a lawyer at the time he made this decision.[99] Thus, since Mr. James cannot even remember if this decision was based upon legal advice, a

---

[98]     In the deposition of Ideal Towing, Mr. James refused to elaborate upon the good faith defense because it "touches on attorney-client communication." Ideal Towing Dep. at 79-80. The Plaintiffs respond that "privilege cannot be used as a sword and a shield." Pls.' Resp. to Defs. Statement of Material Facts ¶ 47 (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). However, putting this evidentiary issue aside, Mr. James's single statement that he saw an attorney simply does not satisfy the Defendants' burden in showing that they are entitled to summary judgment. The Defendants would need to show that, based upon this consultation, Mr. James honestly intended to comply with the FLSA, and that he had an objectively reasonable basis for believing that he was in compliance. The Defendants have failed to do so with this single piece of testimony.

[99]     Michael James Dep. at 24.

reasonable jury could conclude that he did not actually consult an attorney concerning his FLSA obligations.

**E. 26 U.S.C. § 7434**

Finally, the Defendants move for summary judgment as to the Plaintiffs' claim under 26 U.S.C. § 7434 for fraudulent filing of tax information. The Plaintiffs concede that they "do not oppose summary judgment as to issue 4 (violation of 26 U.S.C. § 7434) and abandon that claim."[100] Therefore, the Court deems this claim abandoned.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion for Partial Summary Judgment [Doc. 66] is GRANTED in part and DENIED in part.

SO ORDERED, this 13 day of November, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[100]    Pls.' Resp. Br in Opp'n to Defs.' Mot. for Partial Summ. J. Dismiss, at 3.